UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                           :
UNITED STATES OLYMPIC                      :
COMMITTEE and UNITED STATES                :
ROWING ASSOCIATION,                        :
                                           :
              Plaintiffs,                  :      Civil Action No.: 09-4618 (FLW)
                                           :
v.                                         :
                                           :
GREGORY RUCKMAN, et al.,                   :
                                           :
              Defendants.                  :
_____:
                                           :
GREGORY RUCKMAN,                           :
                                           :
              Plaintiff,                   :      Civil Action No.: 10-1252 (FLW)
                                           :
v.                                         :              OPINION
                                           :
AMERICAN ARBITRATION ASSOC.,               :
UNITED STATES OLYMPIC                      :
COMMITTEE, and UNITED STATES               :
ROWING ASSOCIATION,                        :
                                           :
              Defendants.                  :
_____:

WOLFSON, United States District Judge:

      Defendant Gregory Ruckman removed the instant action, Civil Action No. 09-

4615, brought by Plaintiff United States Rowing Association ("US Rowing") to confirm

an arbitration award in its favor, to this Court.  Contending that this Court does not

have jurisdiction over the matter, *inter alia*, US Rowing now moves to remand.  For the

following reasons, US Rowing's motion is granted.  In addition, United States Olympic

1

Committee ("USOC") moves for dismissal as an improperly joined party.  That motion is also granted.  Lastly, Ruckman moves to submit an "Amended Removal Notice" and for consolidation of Civil Action No. 10-1252 with Civil Action No. 09-4618.[1]  For reasons discussed *infra,* these motions are denied.

I.    BACKGROUND

A.    Facts

Per 36 U.S.C. § 220521, the Ted Stevens Olympic and Amateur Sports Act ("the Sports Act"), US Rowing, "an amateur sports organization," is recognized by the United States Olympic Committee ("USOC") as the "national governing body for the sport of rowing in the United States."  Id. at § 220521(a); Compl. ¶ 1.  On March 22, 2007, Ruckman, along with other former US Rowing member athletes ("the athletes"), filed a demand for arbitration with the American Arbitration Association, naming US Rowing as Respondent.[2]  Through subsequent amendment, the athletes added USOC as a second Respondent.  In that arbitration, the athletes challenged US Rowing's method of qualifying Olympic athletes.  See Compl. ¶¶ 2, 14, 17.[3]

---

[1]    Throughout this opinion, the Court will be referring to Civil Action No. 09-4618, unless otherwise specifically noted.

[2]    The Sports Act mandates that challenges against national governing bodies proceed through arbitration.  See 36 U.S.C. § 220509; Amateur Softball Ass'n of America, 768 F.Supp. 618, 624-25 (S.D.Oh. 1991) (describing the Sports Act's mandatory exhaustion requirement).

[3]    The athletes' initial arbitration demand challenged US Rowing's 2007 procedures.  Upon the passage of time, and by subsequent amendment, they abandoned their challenge to the 2007 procedures and challenged the 2008 procedures instead. See Compl., Exh. B ("Arbitration Award") at ¶¶ 9-10.

The athletes, specifically, challenged, *inter alia*, US Rowing's use of a "Selection Camp" as part of the Olympic qualifying process.  <u>See</u> Compl., Exh. A ("Demand for Arbitration") at 7.  In the athletes' view, the "use [of] open trials to select the National Team for the 2008 Beijing Olympics in the lightweight men's four (LM4-) [division]" was "the only way to protect athlete rights ...."  <u>Id.</u>  These athlete rights, they contended, were the "opportunity to compete" and the "equal opportunity for participation," which rights are accorded by the USOC Bylaws, and the "right to compete" accorded by US Rowing Bylaws.  Compl., Exh. B ("Arbitration Award") at ¶ 1.  The athletes did not seek monetary damages or attorney's fees; they sought only injunctive and declaratory relief.  <u>See</u> Demand for Arbitration at 18.

Ruckman represented the athletes, *pro se*, at the hearing, which took place over three days in late 2007, in Princeton, New Jersey.  Arbitration Award at ¶¶ 14, 18.  Indeed, Ruckman was the only athlete-petitioner to appear and testify at the arbitration hearing.  <u>See</u> <u>id.</u> at ¶ 16.  On March 16, 2008, the arbitration panel issued a 36-page written decision thoroughly analyzing the propriety of US Rowing's selection processes.  The panel acknowledged that the "debate about whether Trials, Camps or Camps with Trials are the best manner for selecting four person boats has been going on since at least the 1980's, and is expected to continue ...."  <u>Id.</u> at ¶ 29.  The panel summarized the parties' positions as follows: the athletes "believe that crews should be selected through an open trial system or camp plus trial system where the winner of the trial is selected to go to the Olympics," while US Rowing "asserts . . . that it took proper steps to promulgate fair procedures that are well within the scope of [its] policy-

making power ....” <u>Id.</u> at ¶ 6.

Applying a rational basis test to its review of the selection procedures, the panel concluded that “Mr. Ruckman . . . presented no evidence to refute the fact that USRowing [sic] made a reasoned policy decision in adopting the [selection procedures].” <u>Id.</u> at ¶ 28. The panel further reasoned that there had been “no showing of a denial of opportunity to anyone under the 2008 selection procedures.” <u>Id.</u> at ¶ 48. In essence, the panel noted, the athletes “want to qualify in a boat with a crew of their own choosing, not one determined by the . . . Coaches at the Selection Camp.” <u>Id.</u> “This evidence,” the panel concluded, “does not demonstrate a denial of opportunity; it demonstrates a difference of opinion as to the best means of selection.” <u>Id.</u> For these reasons, the panel affirmed the 2008 selection procedures.

There were a few aspects of the ruling that favored the athletes, however. First, although the panel concluded that the 2008 selection procedures were facially reasonable, it warned US Rowing that if the procedures were “not used rigorously . . . . the [process] could end up being a meaningless rubber stamp.” <u>Id.</u> at ¶ 50. The panel, further, noted that some of the objective criteria in US Rowing’s selection process were not weighted, hence the procedures “are not as meaningful as they could be, and the transparency of the selection process may be illusory if the objective standards are not used fairly.” <u>Id.</u> Were that to occur, the panel admonished, “the process will be a sham and a disservice to the athletes and the country.” <u>Id.</u> The panel, further, acknowledged that the athletes had cause for concern “[b]ecause of the history of USRowing ....” <u>Id.</u> But, because no athlete had yet been accepted or rejected

4

under the 2008 procedures, the panel had no basis upon which to assess US Rowing's application thereof.  Second, the panel required US Rowing to "provide a suitable substitute for a cancelled 2007 . . . race." Id. at ¶ 58.  Each party bore their own costs. Id. at ¶ 65.

B.   Procedural History

US Rowing then brought this suit to confirm the Arbitration Award, in March 2009, in the Superior Court of New Jersey, Law Division, Mercer County.  US Rowing named Ruckman and the other five athletes as Defendants in the action.  McNamara Decl., Exh. A ("Compl.").  USOC was not named in the suit.  While USOC was a party to the underlying arbitration matter, US Rowing states in its complaint that it chose not to join USOC "because complete relief c[ould] be accorded" between itself and the athletes.  Compl. at ¶ 22.  Further, according to the Complaint, "USOC [had] no objection to the commencement of [the] action, or to confirmation of the [Arbitration] Award, in its absence." Id. at ¶ 23.  In terms of relief sought, US Rowing demanded only a judgment confirming the Arbitration Award. Id. at ¶ 23.  It sought no monetary damages or other relief. Id.

Ruckman removed the action to this Court in September 2009.[4]  Now, US

---

[4]   Because USOC was not named as a party in the state court action, there was no basis for Ruckman to add it as a party through his Notice of Removal.  Instead, the Court holds that Ruckman may not add USOC as a party here simply by designating its name on the Notice of Removal.  Furthermore, since this Court finds that it does not have jurisdiction here and remand is appropriate, it is making no substantive ruling regarding whether USOC should be joined as a party in state court. For this reason, USOC's motion to dismiss is hereby granted.

Rowing moves for dismissal for lack of subject matter jurisdiction.  In support of its motion, US Rowing argues, first, that there is no federal question jurisdiction, and, second, that the jurisdictional amount necessary to establish diversity jurisdiction is not present here.  In response, Ruckman moves for leave to file an "Amended Removal Notice," in which he challenges, *inter alia*, the American Arbitration Association's choice and training of arbitrators.  US Rowing filed a Second Motion to Remand addressing Ruckman's "Amended Removal Notice" motion.  Lastly, Ruckman moves to consolidate this removed action with a separate complaint he has filed against US Rowing, USOC, and the American Arbitration Association ("AAA"), Civil Action No. 10-1252.[5]  This latter complaint, like the instant action, revolves around the 2008 Arbitration Award.  See Compl., Civil Action No. 10-1252 at 2 (contending that the "arbitration ruling at issue in 3:09-cv-04618 was . . . unfair").

II.    STANDARD OF REVIEW

Under 28 U.S.C. § 1441(a), a state-court action that could have been properly

---

[5]      To be clear, at the time Ruckman initially filed this motion to consolidate in January 2010, he attached a copy of the complaint he intended to file.  The complaint was not formally filed.  Since that date, Ruckman filed the complaint in the Newark vicinage.  The suit flowing from that complaint, Ruckman v. Amer. Arbitr. Assoc., et al., Civil Action No. 10-1252 ("Ruckman Compl."), was subsequently transferred to me.

Additionally, in Civil Action No. 10-1252, there are two recently-filed motions to dismiss.  These motions were brought by US Rowing and AAA.  Because I conclude that the Court does not have subject matter jurisdiction over Civil Action No. 09-4618, for the reasons discussed *infra*, I likewise conclude that I do not have subject matter jurisdiction over Civil Action 10-1252.  Accordingly, the substance of the pending motions in Civil Action No. 10-1252 will not be ruled upon by the Court.

filed in federal court may be removed, by the defendant, to federal court.  See Caterpillar, Inc.  v.  Williams, 482 U.S. 386, 392 (1987) (citing 28 U.S.C. § 1441). Federal court jurisdiction may be based upon federal question or diversity grounds. 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1332 (diversity).  In the case of the latter, each party must be of diverse citizenship from each other, and the amount in controversy must exceed $75,000.  28 U.S.C. § 1332(a); Grand Union Superm.  of the Virgin Isl., Inc., v.  H.E. Lockhart Mgmt., Inc., 316 F.3d 408, 410 (3d Cir.  2003). Whether addressing federal question or diversity, "[r]emoval statutes are to be strictly construed against removal, and all doubts are to be resolved in favor of remand." Lopienski v. Centocor, Inc., 2008 WL 2565065, *2 (D.N.J. Jun. 25, 2008) ( citing Shamrock Oil and Gas Corp. v. Sheets, 313 U.S. 100, 104, 61 S.Ct. 868, 85 L.Ed. 1214 (1941)); Brown v. Francis, 75 F.3d 860, 865 (3d Cir. 1996).

"It is . . . settled in th[e Third Circuit] that the party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court."  Frederico v. Home Depot, 507 F.3d 188, 193 (3d Cir. 2007) (citing Samuel-Bassett v. KIA Motors America, Inc., 357 F.3d 392, 396 (3d Cir. 2004)).  This burden is a "heavy" one.  Brown v. Jevic, 575 F.3d 322, 326 (3d Cir. 2009).

"[I]n determining whether the amount in controversy reaches the threshold of $75,000, the court generally accepts the plaintiff's good faith allegations."  McCollum v.  State Farm Ins.  Co., 2010 WL 1552809, *2 (3d Cir. Apr.  20, 2010).  But where, as here, "the plaintiff has not specifically averred in the complaint that the amount in

7

controversy is less than the jurisdictional minimum . . . the case must be remanded if it appears to a legal certainty that the plaintiff *cannot* recover the jurisdictional amount." Frederico, 507 F.3d at 197 (emphasis added). This analytical method is referred to as the Samuel-Basset rubric, named after the Third Circuit's decision in Samuel-Bassett v. KIA Motors America, Inc., supra.[6] See e.g., Goralski v. Shared Tech., Inc., 2009 WL 2460752, *4 (D.N.J. Aug. 7, 2009).

Before applying the legal certainty test, any factual disputes must be resolved. The evidentiary standard applicable to resolving factual disputes is preponderance of the evidence. Frederico, 507 F.3d at 196. In reaching this determination, I "must examine the facts as they exist when the complaint is filed." McCollum, 2010 WL 1552809 at *2. Once the factual findings are made, the court may then apply the legal certainty test. That test mandates remand "if, from the proofs, the court is satisfied to a [legal] certainty that the plaintiff never was entitled to recover [a jurisdictionally sufficient] amount ..." St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938) quoted in Goralski, 2009 WL 2460752 at *2.

III.   DISCUSSION

    A.   Motions to Remand

---

[6]   The alternative framework is that stemming from Morgan v. Gay, 471 F.3d 469, 473 (3d Cir. 2006). The Morgan line of diversity cases are those in which the plaintiff's complaint expressly limits the amount in controversy in an effort to avoid federal jurisdiction. Frederico, 507 F.3d at 195-96 (describing Morgan analytical framework). Because US Rowing's complaint in state court to confirm the arbitration award did not set forth an amount in controversy, that line of cases is not applicable here.

As an initial matter, the Court notes that only Ruckman signed the Notice of Removal; the remaining athlete-defendants named in the state court action did not sign the Notice.  This is problematic because "it is well established that removal generally requires unanimity among the defendants."  <u>Doughtery, Clifford & Wadsworth, Corp. v. Magna Group, Inc.</u>, 2007 WL 2579406, *2 (D.N.J. Jun. 19, 2007).  <u>See</u> <u>also</u> <u>Balazik v. County of Dauphin</u>, 44 F.3d 209, 213 (3d Cir. 1995) (discussing 28 U.S.C. § 1446(a).   While "the unanimity rule may be disregarded where: (1) a non-joining defendant is an unknown or nominal party; or (2) where a defendant has been fraudulently joined,"  there are no unnamed or nominal defendants here, and there is no indication that the named defendants were fraudulently joined.  The only other exception to the unanimity rule is "when a non-resident defendant has not been served at the time the removing defendants filed their petition."  <u>Id.</u> at *3 (citations omitted).  Again, there is no indication that this is the circumstance here, although copies of all the state court summons have not been provided to me.    US Rowing, however, failed to object to the lack of unanimity and, therefore, waived any such challenge.  <u>See</u> <u>In re Notice of Removal Filed by William Einhorn</u>, 481 F.Supp.2d 345, 347 (D.N.J. 2007).  In addition, the Third Circuit has held that defects in removal procedure are not jurisdictional.  <u>Ariel Land Owners, Inc. v. Dring</u>, 351 F.3d 611, 614 (3d Cir. 2003).  Here, I need not rest my decision to remand on the lack of unanimity because it is clear, for the following reasons, that I lack both federal question and diversity jurisdiction over the suit.

As noted, US Rowing filed a motion to remand following Ruckman's Notice of

Removal.  Ruckman responded by seeking leave to file an Amended Removal Notice.

US Rowing then filed a Second Motion to Remand, challenging the proposed Amended

Notice.  In each document submitted to the Court, the parties' arguments center on

whether there exists federal question or diversity jurisdiction.  Because there is great

overlap in arguments advanced in the two notices and motions, I will address and rule

upon them together.

> 1.    Federal Question Jurisdiction

>> a.    Federal Arbitration Act

In his Notice of Removal, Ruckman suggests that there exists federal question

jurisdiction under the Federal Arbitration Act,  9 U.S.C. §§ 16(a)(1)(A) ("FAA").  He is

clearly wrong on this point.  There is no statutory grant of jurisdiction over actions

seeking to confirm arbitration awards.  <u>See</u> <u>Trustees of General Assembly of Church</u>

<u>of Lord Jesus Christ of Apostolic Faith, Inc. v.  Patterson</u>, 300 Fed.Appx. 170, 172 (3d

Cir.  Nov.  28, 2008) (noting in suit seeking to confirm arbitration award that "[t]he

FAA does not create independent federal question jurisdiction.").  As explained by the

Third Circuit in <u>Virgin Islands Housing Authority v. Coastal General Const. Services</u>

<u>Corp.</u>, 27 F.3d 911 (3d Cir.  1994),

> the Arbitration Act is something of an anomaly in federal
> court jurisdiction. The statute creates federal substantive
> law regulating an agreement to arbitrate, but it does not
> create any independent federal-question jurisdiction under
> 28 U.S.C. § 1331 ... or otherwise. [In short,] the Arbitration
> Act does not supply federal jurisdiction where it does not
> otherwise exist.

Id. at 915 (internal quotations and citations omitted).[7] Accord Vaden v. Discovery Bank, 129 S.Ct. 1262, 1272 (2009); Holmes v. Mann Bracken, LLC, 2009 WL 5184485, *3 (E.D.Pa. Dec. 22, 2009).

The only way for a removing defendant to overcome this jurisdictional bar is to cite an independent basis for federal question jurisdiction that "appear[s] on the face of the complaint." Id. This is because district courts possess federal question jurisdiction, under 28 U.S.C. § 1331, to hear "only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Kalick v. Northwest Airlines Corp., 2010 WL 1220811, *2 (3d Cir. Mar. 29, 2010). Because the Sports Act is referenced in US Rowing's Complaint, see Compl.

---

[7]    But see Lindland v. U.S. Wrestling Ass'n, 230 F.3d 1036, 1038 (7th Cir. 2000) (suggesting, without deciding, that 9 U.S.C. § 9 grants jurisdiction to courts to confirm arbitration awards); Teamsters-Employer Local No. 945 Pension Fund v. Acme Sanitation Corp., 963 F.Supp. 340, 345-46 (D.N.J. 1997) (discussing whether 9 U.S.C. § 9 granted federal question jurisdiction to confirm a final labor arbitration). The provision cited by Lindland and Teamsters provides, in pertinent part:

> If the parties *in their agreement* have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award .... If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.

9 U.S.C. § 9 (emphasis added). Neither party has suggested that this provision may form the basis for federal question jurisdiction in this case.

at ¶¶ 12-14, the Court may consider whether the Sports Act itself creates a private right of action, which would result in federal question jurisdiction here.

    b.  The Sports Act

   The Sports Act expressly provides that it does *not* create a private cause of action. 36 U.S.C. § 220505(b)(9); Shepherd v. U.S. Olympic Committee, 464 F.Supp.2d 1072, 1087 (D.Colo. 2006). That provision of the Sports Act states that "neither this paragraph nor any other provision of this chapter shall create a private right of action under this chapter ...."[8] 36 U.S.C. § 220505(b)(9). Reading this language broadly, it forecloses any private right of action.

   That said, some courts have read this language, strictly, to apply only to those suits challenging matters solely within USOC exclusive jurisdiction. Lee v. U.S. Taekwondo Union, 331 F.Supp.2d 1252, 1256-57 (D.Haw. 2004) (discussing Sternberg v. U.S.A. Nat. Karate-Do Federation, 123 F.Supp.2d 659, 665-66 (E.D.N.Y. 2000)), which held that the Sports Act does not foreclose a private right of action alleging gender discrimination). In their view, nothing in the text of §220505(b)(9) suggests that it was intended to preclude causes of action rooted in other statutes, such as the

---

[8]  While this language refers specifically to the USOC, as opposed to national governing bodies such as US Rowing, it appears to incorporate and apply equally to the national governing bodies. Indeed, the Sports Act delegates the USOC's grant of exclusive jurisdiction, described *infra*, to the national governing bodies for implementation. Barnes v. International Amateur Athletic Federation, 862 F.Supp. 1537, 1543 (S.D.W.Va. 1993) ("Each [national governing body] is expressly granted the exclusive right to make determinations regarding the eligibility of an athlete for competition.").

federal discrimination statutes.[9]  Moreover, these courts reason, other provisions in the Sports Act are consistent with the notion that the bar against private rights of action applies to claims related to matters in USOC's exclusive jurisdiction.  For one, the Sports Act grants USOC exclusive jurisdiction over claims "pertaining to United States participation in the Olympic Games," 36 U.S.C. § 220503(3)(a)(2001).  And, as noted, the Sports Act directs that these claims proceed through arbitration.

There is support for this view in the text.  By stating that "neither *this paragraph* nor any other provision of *this chapter* shall create a private right of action *under this chapter* ....," Congress apparently intended to limit the private right of action bar to actions purporting to be rooted in the Sports Act.  Thus, while there is no Third Circuit precedent interpreting 36 U.S.C. § 220505(b), I find the reasoning of these aforesaid cases persuasive and adopt the interpretation expressed therein.

The instant suit, however, challenges matters solely within USOC's exclusive jurisdiction—participation in the Olympic Games.  Thus, on the facts of this case, I conclude that the Sports Act does not create a private right of action for Ruckman and the other athletes.[10]  Consequently, the Sports Act cannot form the basis for federal

---

[9]      Courts also address this issue in terms of preemption.  See e.g., Slaney v. The Intern. Amateur Athletic Federation, 244 F.3d 580, 595-96 (7th Cir. 2001) (addressing whether state-law claims against USOC could proceed in light of § 220505(b)(9)).

[10]      While US Rowing relies on Slaney, supra, for this proposition, that case did not analyze whether the Sports Act creates a private right of action.  Id. at 595 ("We begin by noting that Slaney does not challenge the district court's statement that the Amateur Sports Act creates no private right of action.").

question jurisdiction.  Accord Bennett v. USA Water Polo, Inc., 2009 WL 1089480, *2 (S.D.Fla.  Apr.  21, 2009) (collecting cases); Lee, 331 F.Supp.2d at 1256-57.

### 2. Diversity Jurisdiction

Ruckman argues, alternatively, that this Court possesses diversity jurisdiction over US Rowing's complaint.  The parties' dispute, as to this basis for jurisdiction, is whether the amount in controversy is satisfied.  Noticeably, the parties have not addressed whether Ruckman demonstrated complete diversity of citizenship between Plaintiff and all defendants.  As discussed *supra*, all defendants to the state court action should have signed the removal petition.  Per my independent duty to assess jurisdiction, see In re Einhorn, 481 F.Supp. at 346 n.1, I reviewed the State Court Complaint.  It is clear from the face thereof that one of the defendants, Cameron Booth, is a New Jersey resident.  Compl.  at ¶ 3.  US Rowing states in its papers that its principal place of business is also in New Jersey.  Pl.  Open.  Br., Second Mot. to Remand, at 3.  These facts suggest that there is not complete diversity of citizenship, which alone justifies dismissal.  See Zambelli Fireworks Mfg. Co., Inc. v. Wood, 592 F.3d 412, 419 (3d Cir. 2010) ("Complete diversity requires that, in cases with multiple plaintiffs or multiple defendants, no plaintiff be a citizen of the same state as any defendant.") (citing Exxon Mobile Corp. v. Allapattah Svcs., Inc., 545 U.S. 546, 553 (2005)).  For the sake of completeness, however, I address the parties' arguments regarding amount in controversy.

Section 220505(b)(9), the Sports Act's private-right-of-action bar discussed *supra*, also addresses the amount in controversy requirement in the context of removal

cases,

> [t]he [USOC] may . . . sue and be sued, except that *any civil action brought in a State court* against the corporation and solely relating to the corporation's responsibilities under this chapter *shall be removed*, *at the request of the corporation*, to the district court of the United States in the district in which the action was brought, and such district court *shall have original jurisdiction* over the action *without regard to the amount in controversy* or citizenship of the parties involved ....

Id. (emphasis added).  At first blush, the language appears to generally provide for diversity jurisdiction in removal cases in which the USOC is a party, regardless of the jurisdictional amount.

However, the text expressly limits itself to actions removed by USOC. See Exum v. U.S. Olympic Committee, 2005 WL 3021953, *3-4 (D.Colo. Nov. 9, 2005) (applying § 220505(b)(9) in suit brought against USOC and removed, by USOC, to federal court); Ohio Taekwondo Association v. U.S. Olympic Committee, 2005 WL 1198861, *4 (S.D.Ohio Apr. 20, 2005) (same).  Arguably, such language would extend to actions removed by a national governing body such as US Rowing.  But nothing in the text suggests that the language applies to actions removed by other parties.  Why Congress would treat USOC and non-USOC parties differently is not readily apparent, but the text is nonetheless clear on its face.  Thus, I conclude that the § 220505(b)(9) language, "without regard to the amount in controversy," is inapplicable here.

As noted, US Rowing's underlying State Court Complaint does not seek monetary relief.  It seeks only to confirm the Arbitration Award, which involved the athletes' requests for injunctive and declaratory relief.  In their arbitration demand,

15

the athletes sought to invalidate US Rowing's use of a Selection Camp as part of the Olympic qualification process; they sought no monetary relief.

When the complaint in a removed action seeks to confirm an arbitration award, some courts look to the actual value of the award as the basis for the jurisdictional amount.  See e.g., Mannesmann Dematic Corp. v. Phillips, Getschow Co., 2001 WL 282796, *2 (N.D. Tex. Mar. 16, 2001) (concluding that court lacked diversity jurisdiction where the arbitration award, comprised of attorneys fees, was for $64,035); Baltin v. Alaron Trading Corp., 128 F.3d 1466, 1472-73 (11th Cir. 1997).  Other courts look to the amount *sought* in the arbitration proceeding, whether or not ultimately awarded.  See e.g., Wise v. Marriot Int'l Inc., 2007 WL 2200704, *4 (S.D.N.Y. Jul. 30, 2007); see also Doctor's Assoc., Inc. v. Stuart, 11 F.Supp.2d 221 (D.Conn. 1998) (citing Doctor's Associates, Inc. v. Hollingsworth, 949 F.Supp. 77, 82 (D.Conn.1996)).  The reasoning underlying this latter approach is that courts base the amount on "the value of the [arbitration] award itself *to the petitioner*." Id.  (emphasis added).  This allows the court to consider what that removing party stands to gain if the award is not confirmed, *i.e.*, vacated and set aside.  Id.  ("In other words, it is the amount by which the petitioner will benefit if the Court grants the requested relief.").  The Third Circuit has yet to address whether courts should look to the amount awarded or the amount sought.

Here, of course, no monetary award was sought by, or granted to, the athletes in the arbitration proceeding.  Thus, reference to this line of cases does not answer the amount in controversy question.  These cases are useful, however, in clarifying that I

16

must look to the underlying arbitration proceeding, as opposed to the US Rowing's Complaint, to determine the amount in controversy.  Such an approach is consistent with the Third Circuit's practice in cases seeking to compel arbitration.  See Jumara v. State Farm Ins. Co., 55 F.3d 873, 877 (3d Cir. 1995).  In those cases, the Third Circuit has held that "the amount in controversy in a petition to compel arbitration . . . is determined by the underlying cause of action that would be arbitrated."  See also Manze v. State Farm Ins. Co., 817 F.2d 1062 (3d Cir. 1987).[11]  Because the arbitration demand here sought injunctive and declaratory relief only, I must turn to those cases addressing the value of such claims.

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."  Gisele Grocery & Deli v. Hanover Ins. Group, 2010 WL 1688578, *1 (D.N.J. Apr. 27, 2010) (citing Hunt v. Wash. State Apple Advertising Comm'n, 432 U.S. 333, 347, 97 S.Ct.

---

[11]    Based on this language in Jumara, it would appear that the Third Circuit would follow that line of cases considering the amount sought in the arbitration demand, rather than the amount actually awarded.  On the other hand, when read in context, Jumara's reasoning seems limited to petitions to compel:

> In considering the jurisdictional amount requirement the court should look through to the possible award resulting from the desired arbitration, *since the petition to compel arbitration is only the initial step in a litigation which seeks as its goal a judgment affirming award.*

Id. at 877 (quoting Manze, 817 F.2d at 1068) (emphasis added).  Once the award has been entered, the Third Circuit might consider it more appropriate to rely on the award amount.  As noted, in order to decide this case, I need not resolve which approach the Third Circuit would adopt.

2434, 53 L.Ed.2d 383 (1977)); <u>Prudential Prop. and Cas. Ins. Co. v. Remed. Recov. Care</u>, 136 Fed.Appx. 489, 491 (3d Cir. 2005).  Here, Ruckman avers that the amount in controversy is the "value of the Olympic participation, in itself, as well as the direct monetary value of Olympic participation as an athlete and coach is demonstrable [sic] worth more than $75,000 ...."[12]  In other words, he suggests that the value to him of a judgment requiring US Rowing to abandon its Selection Camp procedures is the monetary compensation an athlete stands to receive if selected for the Olympic team.

In support of his position, Ruckman cites <u>Lindland v.  U.S. Wrestling Ass'n</u>, <u>supra</u>.  That case involved a challenge by a Matt Lindland, a competitor in the U.S. Olympic Greco-Roman Wrestling trials.  <u>Id.</u> at 1037.  His challenge arose out of a championship bout between himself and Keith Seriacki—a bout Lindland lost.  As winner of the bout, Seriacki was entitled to a place on the U.S. Olympic team.  <u>Id.</u> Following an unsuccessful protest to the United States Wrestling Association ("USA Wrestling"), Lindland filed an arbitration demand against USA Wrestling.  Lindland prevailed in the arbitration, and was awarded a rematch that he subsequently won. <u>Id.</u> at 1037-38.

Despite winning the rematch, USA Wrestling did not name Lindland to the

---

[12]     This quote is taken from the complaint Ruckman seeks to consolidate with this matter.  <u>See</u> Ruckman Compl.  at 2 n.*, Docket No.  10-1252.  Considering his *pro se* status, I incorporate the quote here as it relates to the pending motion to remand in this case based on failure to satisfy the amount in controversy requirement.  Indeed, Ruckman explains, in the quoted footnote, that this argument is related to his Amended Removal Notice in this case.  <u>See</u> <u>id.</u>  Furthermore, while Ruckman elsewhere demands $1 million in monetary damages in that complaint, I conclude that my analysis must focus on the relief sought in the arbitration demand.

team.  They placed him on a waiting list instead.  Lindland challenged his wait-list placement by filing suit in federal court to enforce (*i.e.*, confirm) the arbitration award. The Seventh Circuit overturned the district court's dismissal for failure to plead the jurisdictional amount, holding instead that "the value of a position on the Olympic team cannot be said (to a legal certainty, see St. Paul Mercury Indemnity Co. v. Red Cab Co., [supra]), to be less than $75,000."  Lindland, 230 F.3d at 1038.

Though Lindland is not binding on this Court, its reasoning is persuasive.  Case law makes clear that remand is appropriate only when the party seeking remand (here, US Rowing) can demonstrate to a legal certainty that the amount in controversy is less than $75,000.  See Frederico, 507 F.3d at 197.  US Rowing has not presented any evidence to suggest that a position on the US Rowing Olympic team is worth less than $75,000.  Instead, US Rowing has attempted to shift its burden to Ruckman by arguing that he has failed to provide evidence to support his alleged jurisdictional amount.

The problem for Ruckman, however, is that Lindland is factually distinguishable.  In Lindland, the plaintiff was entitled to a position on the U.S. Olympic team by virtue of the arbitration award in his favor.  So, the value of his favorable award was the value of an Olympic team membership.  Here, by contrast, Ruckman has not demonstrated that he or his fellow athletes are entitled to positions on the Olympic team.  The arbitration panel did not require US Rowing to abandon its Selection Camp procedures.  And, even if Ruckman were successful in having this court vacate that award, the best case scenario for the athletes is that they are permitted to

*try* to qualify under revamped procedures.[13]  By virtue of a favorable decision by this Court, the athletes would be no more entitled to an Olympic team appointment than any other amateur athlete.

Cases in this circuit, *albeit* in a different factual context, support my conclusion. Those cases involve parties seeking a declaratory judgment interpreting an insurance contract.  Courts, in those cases, have held that courts may consider the value of the entire contract in ascertaining the amount in controversy.  See Russ v. Unum Life Ins. Co., 442 F.Supp.2d 193, 198 (D.N.J. 2006); Gisele Grocery & Deli v.  Hanover Ins. Grp., 2010 WL 1688578, *1 (D.N.J. Apr.  27, 2010).  In such circumstances, those courts have held, it is appropriate to consider the value of the entire contract.  Those cases, further, hold that the value of future payments to which a claimant would be entitled under the court's interpretation of the parties' contract may also be considered. Id.  However, the cases make clear that future expected payments may be not be considered when they are contingent upon other events that have yet to occur.  Such imputed value would be "speculative."  Id.  And, "mere speculation that a claim will

---

[13]      Indeed, the Eastern District of Pennsylvania reached a similar conclusion in a suit brought by Ruckman in that district in 2007.  In that case, Ruckman sought to confirm a 1992 arbitration award that favored the athletes, even though he was not a party to that arbitration.  Declaration of Paula A. Tuffin, Esq., Exh. F, Order dated March 28, 2008, Ruckman v. United States Rowing Ass'n, Docket No. 07-4183 (E.D.Pa.) ("Ruckman Order") at 1 n.1.  In concluding that the amount in controversy jurisdictional requirement was not met, the court distinguished Lindland, reasoning that "[Ruckman] does not allege he has been rightfully deprived of a spot on the Olympic team."  Ruckman Order at 2 n.1.  Ruckman's argument in that case, however, was even more speculative in that confirmation of the 1992 award would not have "directly result[ed] in an opportunity with monetary value [to him], since [he sought] to enforce an award that [had] no specific implication for him."  Id.

exceed the jurisdictional amount is not enough to confer federal jurisdiction." Id. (citing Flannery v. Cont'l Cas. Co., 2003 WL 21180724, * 5 (S.D. Ind. Mar. 11, 2003)).

One example is the Russ case. In that case, the plaintiff sought a declaratory judgment that he would be entitled to receive benefits under the insurance contract once he reached the age of 65. As the plaintiff was 59 at the time of the suit, the Russ Court held that "the value of his rights under the policy after he turns 65 is only speculative and cannot be included in the amount in controversy." 442 F.Supp.2d at 198. Accord Chamberlin v. Brown-Forman Corp., 2010 WL 715849, *4 (D.N.J. Mar. 1, 2010).

I find this line of cases helpful to further illustrate the problem with Ruckman's amount in controversy argument. The suggestion that a judgment vacating and setting aside the Arbitration Award would lead to financial gain for the athletes presumes that, were US Rowing directed to abandon the Selection Camp procedure, Ruckman and other athletes would qualify for the team.[14] As in Russ, this argument relies on the occurrence of events yet to take place, and there is no guarantee (or even proof of likelihood) that such events will.

---

[14] Ruckman's argument contains another erroneous legal presumption. If this Court were to vacate the Arbitration Award, that would merely return the parties' to the pre-arbitration status quo. Moreover, as US Rowing argues, I question whether Ruckman's request in his Notice of Remand to vacate the Arbitration Award falls within the Federal Arbitration Act's three-month filing window. See 9 U.S.C. § 12 ("Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered.").

As noted, US Rowing focuses on Ruckman's failure to support his amount in controversy allegation with proof, but my conclusion here is a legal one.  Regardless of what amount Ruckman contended he and the other athletes would earn as an Olympic competitor, even relying on the pronouncement in <u>Lindland</u> as to the value of such positions, this Court cannot make the logical leap from rejection of US Rowing's selection procedures to a spot on the Olympic team.  Thus, I am satisfied, to a legal certainty, that the jurisdictional amount has not been met in this case and I conclude that this Court does not have subject matter jurisdiction.

B.      Motion to Consolidate

In light of my decision to remand the state court action, Ruckman's motion to "join" is moot.  The congruency between the state court action and Ruckman's complaint in Docket No.  10-1252, however, leads me to independently consider my jurisdiction over that complaint.  <u>See</u> <u>Huber v. Taylor</u>, 532 F.3d 237, 249 (3d Cir. 2008) (explaining that a district court may consider, *sua sponte*, its own subject matter jurisdiction).  Upon review of the latter complaint, it is clear that it also relates to enforcement of the underlying Arbitration Award.  <u>See</u> Ruckman Compl. at 2 (describing the complaint's sole cause of action as asserting that "[t]he . . . arbitration ruling at issue in 3:09-cv-04618 [is] fundamentally unfair.")  The bases Ruckman asserts for this Court's jurisdiction are the same as those he advanced in the removed action.  <u>See</u> <u>id.</u>  at 1 ("Jurisdiction is founded on the Federal Arbitration Act, and diversity jurisdiction.").

My holding that Ruckman failed to demonstrate federal question or diversity

jurisdiction for the removed case applies with equal force to his separately-filed complaint. The only difference between this latter complaint and the state court action is that the other athletes are not named parties in Ruckman's suit. See id. (designating "Gregory Ruckman" as the sole plaintiff). This difference is immaterial because it has no bearing on my federal question and amount in controversy analysis.

It is true that a "District Court should not dismiss a complaint without first giving the plaintiff an opportunity to respond." Huber, 532 F.3d at 549. Here, however, Ruckman advances the exact same jurisdictional arguments in support of his complaint that were rejected by this Court *supra*. Thus, I find it appropriate to dismiss the complaint without further argument from the parties.

C.     Attorney's Fees

Finally, US Rowing seeks attorney's fees and costs pursuant to 28 U.S.C. § 1447(c). That provision affords courts discretion to award "payment of just costs and any actual expenses, including attorney's fees, incurred as a result of removal." Id.; Russ, 442 F.Supp.2d at 199. Despite a broad grant of discretion, "courts may award attorney's fees under § 1447(c) only where the removing party lacked any objective reasonable basis for seeking removal." Russ, 442 F.Supp.2d at 200 (quoting Martin v. Franklin Capital Corp., 546 U.S. 132, 136 (2005)).

This case presents a close call on the attorney's fees question. On the one hand, Ruckman does not have a basis under the law to support his removal. Both his federal question jurisdiction and diversity jurisdiction arguments have been rejected by the Court. But, on the other hand, the legal questions this Court was required to address,

23

particularly in regard to the proper method to calculate the amount in controversy requirement, were far from simple.  In that area, there was no clear Third Circuit precedent to apply.  And, Ruckman did cite to case law to support his position, Lindland v.  U.S. Wrestling Ass'n, although that case was considered distinguishable by this Court.  The lack of binding circuit precedent, combined with Ruckman's *pro se* status, leads me to conclude that an award attorney's fees is not appropriate in this case.  Accord Russ, 442 F.Supp.2d at 200.

IV.     CONCLUSION

    For the foregoing reasons, Plaintiff US Rowing's motions to remand are GRANTED.  USOC's motion to dismiss is also GRANTED.  Ruckman's motion for leave to file an Amended Removal Notice and his motion to "join" are DENIED.  Per these rulings, Docket No.  09-4618 is REMANDED to the Superior Court of New Jersey, Law Division, Mercer County.  Ruckman's complaint in Docket No. 10-1252 is DISMISSED without prejudice.


DATED:      May 28, 2010



                        /s/ Freda L. Wolfson
                        United States District Judge



24